# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

THE GREGORY M. RAIFF 2000 TRUST, )
)
)
Plaintiff, )
)
v. ) C.A. No. 2024-0368-LWW
)
JENZABAR, INC., a Delaware )
Corporation; ROBERT A MAGINN, )
JR.; DANIEL QUINN MILLS; )
JOSEPH SAN MIGUEL; LING CHAI; )
JAMISON BARR; TORRENCE )
HARDER, IV; THE CHAI-MAGINN )
FAMILY LIMITED PARTNERSHIP; )
THE CHAI-MAGINN FAMILY LLC; )
and JOHN and JANE DOES 1-5, )
)
Defendants, )
)
and )
)
JENZABAR INC., )
)
Nominal Defendant. )

## MEMORANDUM OPINION

Date Submitted: January 16, 2026
Date Decided: April 13, 2026

David H. Holloway, SHLANSKY LAW GROUP, LLP, Wilmington, Delaware; Colin R. Hagan, David J. Shlansky, SHLANSKY LAW GROUP, LLP, Chelsea, Massachusetts; *Counsel for Plaintiffs Christopher Barry, Jared Snell, and Laurel Santmire*

Albert H. Manwaring, IV, Kirsten A. Zeberkiewicz, Aubrey J. Morin, MORRIS JAMES LLP, Wilmington, Delaware; *Counsel for Defendant and Nominal Defendant Jenzabar, Inc.*

Jody C. Barillare, Brian Loughnane, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Michael D. Blanchard, Andrew M. Buttaro, MORGAN, LEWIS & BOCKIUS LLP, Boston, Massachusetts; *Counsel for Defendants Robert A. Maginn, Jr. and The Chai-Maginn Family LLC*

Thad J. Bracegirdle, Sarah T. Andrade, BAYARD, P.A., Wilmington, Delaware; *Counsel for Defendants D. Quinn Mills and Olga Perera San Miguel, Independent Executor of the Estate of Joseph Girard San Miguel, Deceased*

John M. Seaman, Adam K. Schulman, ABRAMS & BAYLISS LLP, Wilmington, Delaware; *Counsel for Defendant Torrence Harder*

Jason A. Cincilla, Wade A. Bredin, MANNING GROSS + MASSENBURG LLP, Wilmington, Delaware; *Counsel for Defendant The Chai-Maginn Family Limited Partnership*

Ling Chai, Belmont, Massachusetts; *Defendant, Pro Se*

**WILL, Vice Chancellor**

This action is one of several suits brought in the wake of a prior judgment against Jenzabar, Inc. founder Robert A. Maginn, Jr. In 2022, this court held that Maginn usurped a corporate opportunity belonging to a Jenzabar investment vehicle and ordered him to pay $30.7 million in damages. Now, stockholders of Jenzabar are suing Maginn and his fellow directors for advancing his legal fees and paying the prior judgment. They also seek relief for a separate purported scheme from 2010 to 2015 to overpay directors and officers while diluting minority stockholders.

The complaint suffers from several threshold defects. First, the claims are derivative, despite being styled as dual-natured. Some claims are not yet ripe for adjudication; others are many years stale. The defendants' motions to dismiss are therefore granted.

## I. BACKGROUND

The following facts are drawn from the First Amended Complaint ("Complaint") and the documents it incorporates by reference.[1]

---

[1] First Am. Compl. (Dkt. 31) ("Am. Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (providing that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citation omitted)), *aff'd*, 164 A.3d 56 (Del. 2017) (TABLE).

## A. Jenzabar

Jenzabar, Inc., a Delaware corporation, is a Massachusetts-based education technology company.[2] It was founded by former spouses Ling Chai and Robert A. Maginn, Jr.[3] At various times, Maginn served as the Chief Executive Officer and Chairman of Jenzabar. Chai also served as Chief Executive Officer. And both are members of Jenzabar's Board of Directors.[4]

The plaintiffs—Christopher Barry, Jared Snell, and Laurel Santmire—are Jenzabar stockholders who claim that former and current Jenzabar directors used "aggressive methods" to increase insiders' ownership stakes at the minority's expense.[5] Such tactics included allegedly sharing "misleading information" to induce investors to sell Jenzabar securities, such as falsely stating that their stock options and warrants could not be exercised.[6] As a result, Jenzabar insiders

---

[2] Am. Compl. ¶¶ 1, 7.

[3] *Id.* ¶ 20.

[4] *Id.* ¶¶ 1, 8, 11.

[5] *Id.* ¶ 20.

[6] *Id.* ¶ 26 ("For example, when a senior officer who owned options for about 4.5% of Common stock retired and tried to exercise, Jenzabar refused; then he was informed that he had given an employment release when he took his last paycheck, Jenzabar took him off of the capitalization table, and reduced the total number of shares issued and outstanding.").

2

accumulated most of Jenzabar's stock for themselves while other stockholders suffered dilution and financial losses.[7]

Two purported "patterns of misconduct" took place.[8] The first is a "pattern of breach of fiduciary duty and fraud" that allegedly stripped at least $81 million of value from Jenzabar, which was the subject of an earlier judgment in this court in *Deane v. Maginn*.[9] The second is a "previously-unknown pattern" of misconduct from 2012 to 2015 involving Jenzabar's Board of Directors and General Counsel, resulting in a "distribution of tens of millions of dollars in cash," the dilution of Jenzabar stock, and a loss of "hundreds of millions of dollars of value[.]"[10]

### B.    The *Deane* Litigation

The first "pattern" of alleged misconduct concerns Jenzabar's advancement of legal fees and payment of a judgment on Maginn's behalf.[11]

In 2022, this court held in *Deane* that Maginn wrongfully usurped 19.09% of Jenzabar common stock worth approximately $81 million through various

---

[7] *Id.* ¶ 1.

[8] *Id.*

[9] *Id.* ¶¶ 1, 8, 32; *see Deane v. Maginn*, 2022 WL 16557974 (Del. Ch. Nov. 1, 2022), *aff'd*, 338 A.2d 1292 (Del. 2025) (TABLE).

[10] Am. Compl. ¶ 1; *see also id.* ¶¶ 71, 118.

[11] *Id.* ¶ 32 (arguing that the payment of $5 million in legal fees and $30.7 million in damages resulted in the removal of $81 million of stockholder value); *id.* ¶ 42.

investment vehicles known as the "New Media" entities.[12] Maginn incurred $5 million in legal fees for the suit, and was ordered to pay $30.77 million in damages.[13] Jenzabar advanced the fees and paid the damages on Maginn's behalf, purportedly pursuant to its certificate of incorporation and a separate indemnity agreement.[14]

The plaintiffs assert that these payments to Maginn constitute misconduct by Jenzabar's Board. They allege that the payments effectively indemnified Maginn, and that the Board "has no plans to recoup" them.[15] They believe that Chai, Maginn, and director Quinn Mills made "decisions and extensions of funds" during the *Deane* litigation "that aided and supported Maginn's actions in defrauding Jenzabar" while "squander[ing] corporate assets."[16] There are no specific allegations pertaining to the nature of those "decisions and extensions of funds[,]" however.[17]

The plaintiffs also contend that Maginn misused the voting power flowing from his wrongfully acquired 19.09% stake to "install and maintain wayward fiduciaries" who approved additional salary, stock dividends, and bonuses for

---

[12] *Id.* ¶¶ 29, 33; *see Maginn*, 2022 WL 16557974, at *2-8.

[13] Am. Compl. ¶¶ 42, 103.

[14] *Id.* ¶ 42; Manwaring Aff. (Dkt. 55) Ex. A; *see TVI Corp. v. Gallagher*, 2013 WL 5809271, at *14 (Del. Ch. Oct. 28, 2013) ("On a motion to dismiss, Delaware courts may take judicial notice of the terms of a corporation's governing certificate of incorporation.").

[15] Am. Compl. ¶¶ 42-43, 167.

[16] *Id.* ¶ 44.

[17] *See id.*

Maginn.[18]  These allegations relate to the other purported scheme complained of by the plaintiffs.

## C.    The Alleged Dilution and Overcompensation Scheme

The second "pattern" of alleged misconduct concerns "concealed . . . giveaway[s]" to Maginn and Chai that purportedly increased their ownership stake.[19]

In 2010, Maginn, Chai, and their affiliates owned about 18% of Jenzabar's stock.[20]  By 2021, their ownership grew to 91%.[21]  The plaintiffs assert that this increase was due to awards of unearned "bonuses" and "employee incentive" programs enacted between 2012 and 2015.[22]  The cash bonuses were allegedly worth tens of millions of dollars, and the incentive programs awarded Jenzabar stock worth hundreds of millions of dollars.[23]  During this same period, other Jenzabar stockholders mysteriously disappeared from the capitalization table or lost their stock by "technical forfeitures . . . or fire-sales."[24]

---

[18] *Id.* ¶ 167.a.ii.

[19] *Id.* ¶¶ 32, 48.

[20] *Id.* ¶ 55.

[21] *Id.*  The plaintiffs allege that the newly accreted stock was funneled to various entities controlled by Maginn and Chai.  *Id.* ¶¶ 58-59.

[22] *Id.* ¶ 52.

[23] *Id.* ¶¶ 83, 91.

[24] *Id.* ¶¶ 87, 90.

The plaintiffs state that they learned of these issues in late March 2024. They allegedly pieced together evidence of "fixing" other stockholder percentages in dividend communications and the elimination of other stockholders from the Jenzabar capitalization tables.[25] They rely on text messages, public sources, and their own investigation of "various dockets . . . , third-party interviews, counsel's statements, and disclosures by others familiar with the facts."[26]

## D.     This Litigation

On April 5, 2024, the Gregory M. Raiff 2000 Trust (the "Trust") filed this lawsuit.[27] The operative First Amended Complaint was filed on April 1, 2025, asserting thirteen causes of action, styled as both direct and derivative claims.[28] It advances claims for breach of fiduciary duty (Counts I, II, III, IV), declaratory judgment (Count V), unjust enrichment (Count VI), corporate waste (Count VII), "equitable indemnification" (Count VIII), misappropriation (Count IX), "bad faith" (Count X), fraud (Count XI), "injunctive relief" (Count XII), and civil conspiracy (Count XIII). They seek a declaratory judgment regarding the extent of dilution of Jenzabar stock, indemnification, and injunctive relief.

---

[25] *Id.* ¶ 93.

[26] *Id.* ¶¶ 47-50, 86.

[27] Dkt. 1.

[28] Dkt. 31.

The defendants moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6).[29] Extensive briefing by various defendant groups ensued.[30] Oral argument on the motions took place on September 23, 2025.[31]

A week after argument, on September 30, 2025, three Jenzabar stockholders—Barry, Snell, and Santmire (the "Intervenors")—moved to intervene, seeking to replace the Trust as plaintiff.[32]  I granted the motion on

---

[29] Dkts. 32-35, 37-38, 61; *see also* Def. and Nom. Def. Jenzabar, Inc.'s Opening Br. in Supp. of Mot. to Dismiss (Dkt. 55) ("Jenzabar's Opening Br."); Defs. Ling Chai and Chai-Maginn Family Limited Partnership's Opening Br. in Supp. of Mots. to Dismiss (Dkt. 56); Torrence Harder's Joinder in Defs.' Opening Brs. (Dkt. 60); Opening Br. of D. Quinn Mills and Olga Perera San Miguel in Supp. of Mots. to Dismiss Pl.'s First Am. Compl. (Dkt. 62); Def. Robert A. Maginn, Jr.'s Opening Br. in Supp. of Mot. to Dismiss (Dkt. 63) ("Maginn's Opening Br.").

[30] Pl.'s Answering Br. in Opp'n to Jenzabar, Inc.'s Mot. to Dismiss (Dkt. 67) ("Pls.' Opp'n to Jenzabar"); Pl.'s Answering Br. in Opp'n to Robert A. Maginn, Jr.'s Mot. to Dismiss (Dkt. 68) ("Pls.' Opp'n to Maginn"); Pl.'s Answering Br. in Opp'n to Jamison Barr's Mot. to Dismiss (Dkt. 69); Pl.'s Answering Br. in Opp'n to Ling Chai's and the Chai-Maginn Family Limited Partnership's Mot. to Dismiss (Dkt. 70); Pl.'s Answering Br. in Opp'n to D. Quinn Mills's and Est. of Joseph Girard San Miguel's Mot. to Dismiss (Dkt. 71) ("Pls.' Opp'n to Mills and San Miguel"); Pl.'s Opp'n to Torrence Harder, IV's Mot. to Dismiss (Dkt. 72) ("Pls.' Opp'n to Harder"); Def. Jamison Barr's Reply Br. in Further Supp. of Mot. to Dismiss (Dkt. 77); Def. and Nominal Def. Jenzabar, Inc.'s Reply Br. in Further Supp. of Mot. to Dismiss (Dkt. 78); Defs. Ling Chai and Chai-Maginn Family Limited Partnership's Reply Br. in Supp. of Mots. to Dismiss (Dkt. 80); Def. Robert A. Maginn, Jr.'s Reply Br. in Supp. of Mot. to Dismiss (Dkt. 81); Def. Chai-Maginn Family LLC's Joinder in Def. Robert A. Maginn, Jr.'s Opening Br. and Reply Br. in Supp. of Mot. to Dismiss (Dkt. 84); Reply Br. of Defs. D. Quinn Mills and Olga Perera San Miguel in Supp. of Mots. to Dismiss (Dkt. 85); Torrence Harder's Reply in Supp. of Mot. to Dismiss (Dkt. 86); *see also supra* note 29.

[31] Dkt. 93.

[32] Mot. to Intervene (Dkt. 95).  Barry and Snell have been Jenzabar stockholders since 1999, and Santmire since 2004. *Id.* at 2.

7

December 29, 2025, and directed the Intervenors to adopt the Complaint as their operative pleading to limit prejudice to the defendants.[33] The Intervenors dropped the civil conspiracy claim (Count XIII).[34] Submissions to supplement the prior motion to dismiss briefing were then filed, and the case was deemed under advisement as of January 16, 2026.[35]

## II.    ANALYSIS

The defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Rule 23.1 for lack of standing to pursue derivative claims.[36] The defendants raise numerous procedural and substantive bases to dismiss the case.

I need not reach the merits of this dispute, however.[37] The plaintiffs' claims fail on three threshold grounds: the direct claims are exclusively derivative, the

---

[33] Letter Op. Resolving Mot. to Intervene (Dkt. 114) ("Mot. to Intervene Letter Op.").

[34] Dkt. 95.  As a result, former defendant Jamison Barr was dismissed from this suit. Dkt. 123.

[35] Def. and Nominal Def. Jenzabar, Inc.'s Suppl. Submission in Supp. of Mot. to Dismiss (Dkt. 120); Def. Robert A. Maginn, Jr.'s Suppl. Submission in Supp. of Mot. to Dismiss (Dkt. 122) ("Maginn's Suppl. Submission").

[36] Ct. Ch. R. 12(b)(1); Ct. Ch. R. 12(b)(6); Ct. Ch. R. 23.1.

[37] The Complaint and the plaintiffs' briefing contain several allegations about events in 2023 and 2024, including a $1.5 million signing bonus paid to Maginn, a $2.5 million salary paid to Mills, and the purported diversion of corporate resources. *See, e.g.*, Am. Compl. ¶¶ 38-39; Pls.' Opp'n to Mills and San Miguel 5-9.  But they address these recent events solely to show entrenchment and lack of independence to excuse demand and trigger

indemnification claims are unripe, and the remaining claims are untimely.[38]  This case is dismissed in full.

## A.    Direct or Derivative

I begin with the defendants' argument that the Complaint pleads only derivative claims.  The determination of whether a claim is direct or derivative is a question of law assessed under Rule 12(b)(6).[39]  To resolve the Rule 12(b)(6) motion, I must "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party."[40]  I need not

---

entire fairness review for the underlying historical transactions.  *See* Pls.' Opp'n to Mills and San Miguel 9-14 (defining the "Disputed Transactions" for which relief is sought).  Because the plaintiffs do not assert these 2023 and 2024 events as independent bases for liability or standalone claims for relief, I do not address them further.

[38] The operative Complaint describes Count XII as a "three-part derivative claim" seeking three forms of injunctive relief: (1) enjoining Maginn, Mills, Harder, and Chai from "causing Jenzabar to indemnify Maginn for the judgment rendered against Maginn in the *Deane* litigation . . . or similar litigation[,]" (2) enjoining Maginn, Mills, Harder, and Chai from "selling all or substantially all of the assets of Jenzabar or otherwise entering into any merger of Jenzabar," and (3) "an order or injunction under DGCL § 141(c)" compelling Jenzabar to hold a stockholder meeting.  Am. Compl. ¶¶ 338-42.  The first part has been briefed and is discussed below.  *See infra* Section II.B.  The second and third parts were not briefed beyond a statement that the plaintiffs raise a request for an annual meeting "out of an abundance of caution" and "reserve[] all rights to seek that remedy through a separate request for an injunction or through a proceeding pursuant to 8 *Del. C.* § 211."  Pls.' Opp'n to Harder 8; Pls.' Opp'n to Maginn 56; Pls.' Opp'n to Jenzabar 27.  The plaintiffs' decision not to brief that portion of their claim constitutes a waiver.  *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[39] *See Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021).

[40] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

"accept every strained interpretation of [the plaintiffs'] allegations"[41] or conclusory statements "unsupported by allegations of specific facts."[42] A motion to dismiss should be granted where a plaintiff cannot recover "under any reasonably conceivable set of circumstances susceptible of proof."[43]

In resolving whether a claim is direct or derivative, the court is not bound by a plaintiff's labels, but must independently look to the nature of the wrong alleged.[44] Delaware courts apply the test established in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, which asks: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[45]

The plaintiffs purport to plead several causes of action—Counts I, II, IV, V, VI, and X—as either direct or "both direct and derivative."[46] The core harms alleged are that Maginn and Chai caused Jenzabar to issue them "tens of millions of dollars

---

[41] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[42] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom., Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) (TABLE).

[43] *Savor*, 812 A.2d at 896-97.

[44] *See Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *16 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012) (TABLE).

[45] 845 A.2d 1031, 1033 (Del. 2004).

[46] Am. Compl. ¶¶ 164, 175, 192, 217, 239, 256, 275, 315, 348. The plaintiffs concede that Count VII for corporate waste is exclusively derivative, despite styling it otherwise in the Complaint. *See* Pls.' Opp'n to Jenzabar 15 n.4. They also plead Counts III, VIII, IX, XI, and XII as derivative. *See* Am. Compl. ¶¶ 207, 283, 299, 322, 338.

of unearned cash bonuses and hundreds of millions of dollars of stockholder value[.]"[47] Through these issuances, Maginn and Chai allegedly inflated their ownership of Jenzabar "from 18% or less to 90.56% (or 90.62%)[.]"[48] The plaintiffs argue that this conduct constituted a direct harm because it "impaired the [plaintiffs'] voting power by diluting [their] equity."[49]

These are quintessential derivative claims. In *Brookfield Asset Management, Inc. v. Rosson*, the Delaware Supreme Court confirmed that "equity overpayment/dilution claims, absent more, are exclusively derivative."[50] The harm alleged here—the improper extraction of corporate assets and equity—was suffered in the first instance by Jenzabar.[51] Any resulting dilution of the minority stockholders' voting power or economic interest is a secondary harm shared proportionally among all stockholders.[52] The recovery for such claims flows to the corporation.[53]

The plaintiffs attempt to evade *Brookfield* by shoehorning their allegations into two recognized exceptions. Both arguments are unavailing.

---

[47] *See* Am. Compl. ¶ 32.

[48] *Id.* ¶¶ 69, 109.

[49] *See id.* ¶ 178; *see also* Pls.' Opp'n to Jenzabar 9.

[50] *Brookfield*, 261 A.3d at 1267.

[51] *See, e.g.*, Jenzabar's Opening Br. 10-11.

[52] *Id.*

[53] *Brookfield*, 261 A.3d at 1262-63.

11

First, the plaintiffs argue that the dilution claims are direct because the cumulative transactions "resulted in a . . . change in control" under *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*[54] *Brookfield* acknowledged that a dilution-based claim might be direct if it involves a transaction that shifts control from a diversified group of stockholders to a controlling interest, depriving the minority of a control premium.[55] But a creeping accumulation of stock over a decade is not a *Revlon* transaction.[56] There was no active bidding process, merger, or sale where Jenzabar's stockholders were wrongfully deprived of a control premium.[57]

Second, the plaintiffs rely on *In re Gaylord Container Corp. Shareholders Litigation* to argue that the defendants' actions constituted a "wrongful impairment by fiduciaries of the stockholders' voting power."[58] But *Gaylord* applied to the adoption of defensive measures—such as a poison pill—designed to entrench management and impede the stockholder franchise.[59] Equity dilution resulting from

---

[54] *See, e.g.*, Pls.' Opp'n to Jenzabar 12-13 (citing *Revlon*, 506 A.2d 173 (Del. 1986)).

[55] *Brookfield*, 261 A.3d at 1266-67.

[56] *See* Am. Compl. ¶ 69; *see also* Maginn's Reply Br. 5.

[57] *See In re Paxson Commc'n Corp. S'holders Litig.*, 2001 WL 812028, at *7 (Del. Ch. July 12, 2001) (holding that *Revlon* does not apply where plaintiffs fail to allege a sale or change of control such that stockholders "have been or will be deprived of a control premium").

[58] *See* Pls.' Opp'n to Jenzabar 13 (citing *Gaylord*, 747 A.2d 71, 79 (Del. Ch. 1999)).

[59] *Gaylord*, 747 A.2d at 74.

an alleged corporate overpayment does not transform a derivative claim into a direct one.[60]

Because these claims are exclusively derivative, they belong to Jenzabar and are subject to the standing and demand requirements of Court of Chancery Rule 23.1.[61] Furthermore, Count V and Count XII improperly name Jenzabar as a defendant.[62] Jenzabar cannot logically be named as a direct defendant on claims brought on its own behalf.[63]

Accordingly, the direct claims asserted in Counts I, II, IV, V, VI, and X are dismissed under Rule 12(b)(6), and Jenzabar is dismissed as a defendant.

---

[60] *See New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 156 (Del. Ch. 2023) ("[T]he Delaware Supreme Court h[eld] definitively [in *Brookfield*] that claims for equity dilution are only and always derivative.").

[61] *See* Ct. Ch. R. 23.1. As noted, the plaintiffs intervened in this action, seeking to replace the Trust as the plaintiff. *See supra* notes 32-35 and accompanying text. I permitted the defendants to provide supplemental briefing to address outstanding issues. Mot. to Intervene Letter Op. 7-8.

In his supplemental brief, Maginn argued that the Trust's lack of derivative standing could not be retroactively cured by the current plaintiffs' intervention. Maginn's Suppl. Submission 2-4. This argument is meritless. Delaware courts have permitted stockholders, who satisfy the requirements of Rule 23.1, to retroactively cure a prior derivative plaintiff's lack of standing. *See, e.g.*, *In re MAXXAM, Inc./Federated Dev. S'holders Lit.*, 698 A.2d 949, 954 (Del. Ch. 1996). Doing so squares with bedrock "considerations of justice and practicality" and is consistent with this court's desire to resolve cases on their merits. *Id.*

[62] *See* Am. Compl. ¶¶ 226-47, 337-46.

[63] *Cf. Brookfield*, 261 A.3d at 1262-63.

13

**B.     Ripeness**

The plaintiffs seek a declaration that the defendants breached their fiduciary duties and committed corporate waste by "causing Jenzabar to indemnify Maginn for millions of dollars of defense fees" in *Deane* and "other" suits.[64]  The defendants counter that Jenzabar has only advanced Maginn's legal fees and posted an appeal bond as contractually required, and has yet to determine that those amounts are indemnifiable.[65]  Thus, they argue that the indemnification-related claims must be dismissed under Court of Chancery Rule 12(b)(1).[66]

"Delaware courts decline to exercise jurisdiction over a case unless the underlying controversy is ripe, *i.e.*, has 'matured to a point where judicial action is appropriate.'"[67]  A dispute is not ripe when "the claim is based on 'uncertain and contingent events' that may not occur, or where 'future events may obviate the need'

---

[64] Am. Compl. ¶ 174.

[65] *See* Jenzabar's Reply Br. 25.

[66] *See Shahin v. City of Dover*, 2018 WL 4635730, at *3 (Del. Ch. Sept. 26, 2018) ("[T]he standards governing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction are far more demanding of the non-movant [than Rule 12(b)(6)].  The burden is on the plaintiff to demonstrate that subject matter jurisdiction exists.  In deciding whether the plaintiff has met that burden, the [c]ourt need not accept the plaintiff's factual allegations as true and is free to consider facts not alleged in the complaint."); *Sloan v. Segal*, 2008 WL 81513, at *6 (Del. Ch. Jan. 3, 2008) ("This court has the discretion to consider evidence outside the pleadings in deciding motions under Rule 12(b)(1) . . . .").

[67] *XL Specialty Ins. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (citing *Stroud v. Milliken Ents., Inc.*, 552 A.2d 476, 480 (Del. 1989)).

14

for judicial intervention."[68] This principle seeks to "conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature . . . lawmaking."[69] The court maintains broad discretion in determining whether a claim is ripe.[70]

The plaintiffs assert several claims regarding Jenzabar's indemnification of Maginn in *Deane*, and the extent to which other defendants are complicit in causing such indemnification.[71] They claim breach of fiduciary duty (Counts II and III), corporate waste (Count VII), and misappropriation (Count IX).[72] They also ask that I order certain defendants to indemnify Jenzabar for the judgment entered against Maginn in *Deane* (Count VIII), declare that those defendants owe Jenzabar "equitable indemnification" (Count V), and enjoin the same defendants from providing further indemnification (Count XII).[73]

---

[68] *Id.* at 1217-18 (citation omitted).

[69] *Id.* at 1217.

[70] *See In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2017 WL 5565264, at *3 (Del. Ch. Nov. 20, 2017).

[71] Am. Compl. ¶¶ 190, 201-12 (Counts II and III); *id.* ¶¶ 269-72 (Count VII); *id.* ¶¶ 293-305 (Count IX).

[72] *Id.* ¶¶ 233-37 (Count V); *id.* ¶¶ 282-92 (Count VIII); *id.* ¶¶ 337-46 (Count XII).

[73] *See* Pls.' Opp'n to Jenzabar 23-24 ("Plaintiff seeks to enjoin or otherwise prevent further indemnification of Maginn.").

None of these claims are ripe. The plaintiffs concede that no final indemnification decision has been made. Indeed, Count XII asks that I preemptively stop any such decision.[74]

At bottom, the plaintiffs conflate two different legal concepts: advancement and indemnification.[75] "Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service."[76] The right to advancement is distinct from the right to indemnification.[77]

If a party meets the requirements for advancement, then the party's legal fees in defense of the action are advanced until the action is resolved.[78] Only then can one determine whether the party is ultimately entitled to indemnification. Once the underlying legal action is complete, a separate process commences to determine

---

[74] Am. Compl. ¶ 340.

[75] *Advanced Min. Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992).

[76] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005); *see Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 822-23 (Del. 1992).

[77] *See Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldg. Co.*, 853 A.2d 124, 128 (Del. Ch. 2004) (observing that advancement and indemnification are "distinct types of legal rights" (citation omitted)).

[78] *See Batty v. UCAR Int'l Inc.*, 2019 WL 1489082, at *8 (Del. Ch. Apr. 3, 2019) (explaining that indemnification accrues "upon the conclusion of a matter or upon resolution of one or more claims" (quoting William D. Johnston et al., *Indemnification and Insurance for Directors and Officers*, 54-3rd Corporate Practice Portfolio Series § III.A.1 at A-17 (BNA 2014))).

whether a party is subject to indemnification or if any advanced sums must be repaid.[79]

Here, Jenzabar advanced Maginn's legal fees and posted an appeal bond to secure the judgment in *Deane*.[80] Maginn was contractually entitled to this advancement under both Jenzabar's certificate of incorporation and his indemnity agreement.[81] No legal determination has yet been made as to whether Maginn is entitled to indemnification.[82] Maginn's indemnity agreement outlines a specific adjudicatory process for determining indemnification, which requires the appointment of independent counsel.[83] That process is ongoing.

In addition, an indemnification action is pending before this court regarding Maginn's losses and expenses incurred in *Deane*.[84] There, the parties are litigating over the appointment of independent counsel as required by Maginn's indemnity agreement.[85] Because Maginn's entitlement to indemnification is currently being

---

[79] *See InterMune, Inc. v. Harkonen*, 2024 WL 3619692, at *16 (Del. Ch. Aug. 1, 2024) (ordering the repayment of advanced sums).

[80] *See* Jenzabar's Reply Br. 26-27.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 26 (citing the indemnity agreement).

[84] Compl., *Maginn v. Jenzabar, Inc.*, C.A. No. 2025-0913-LWW (Del. Ch. Aug. 11, 2025); *see also* Del. R. Evid. 202(d)(1)(C) (permitting a court to take judicial notice of the records of the court in which the action is pending).

[85] *See, e.g.*, Compl., *Maginn v. Jenzabar, Inc.*, C.A. No. 2025-0913-LWW (Del. Ch. Aug. 11, 2025); Def.'s Answer and Counterclaim, *Maginn v. Jenzabar, Inc*., C.A.

17

litigated, there are "future events" that "'may obviate the need' for judicial intervention[.]"[86]

"Under settled principles of Delaware law, 'indemnification claims do not typically ripen until after the merits of an action have been decided, and all appeals have been resolved.'"[87] A cause of action regarding indemnification does not accrue until the party "can be confident any claim against him has been resolved with certainty."[88] Jenzabar has only paid Maginn his contractually-owed advancement. It has not yet approved indemnification. Thus, the plaintiffs' claims challenging indemnification have not "matured to the point where the plaintiff has suffered or will imminently suffer an injury" and are unripe.[89]

The motion to dismiss is granted without prejudice as to Counts III, VIII, and XII in their entirety, and as to Counts I, II, V, VII, IX, and X to the extent they are premised on the indemnification of Maginn.[90]

---

No. 2025-0913-LWW (Del. Ch. Sept. 3, 2025); Pl.'s Reply to Def.'s Countercl., *Maginn v. Jenzabar, Inc.*, C.A. No. 2025-0913-LWW (Del. Ch. Sept. 23, 2025).

[86] *XL Specialty Ins.*, 93 A.3d at 1217-18.

[87] *Huff v. Longview Energy Co.*, 2013 WL 4084077, at *2 (Del. Ch. Aug. 12, 2013) (quoting *Hampshire Gp., Ltd. v. Kuttner*, 2010 WL 2739995, at *53 (Del. Ch. July 12, 2010)).

[88] *O'Brien v. IAC/Interactive Corp.*, 2009 WL 2490845, at *5 (Del. Ch. Aug. 14, 2009) (citing *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 919 (Del. 2004)).

[89] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 816 (Del. 2018).

[90] To the extent the plaintiffs attempt to base their claims on Jenzabar's indemnification of Maginn in "other litigation in regard to similar topics" (Am. Compl. ¶ 174), those allegations fail to state a claim under Rule 12(b)(6). Although Rule 12(b)(6) is a plaintiff-friendly standard, "vague allegations" must "give the opposing party notice of the

## C.    Timeliness

Finally, the defendants assert that the plaintiffs' remaining claims are time-barred.[91] The plaintiffs allege that the purported misconduct took place "in and around 2010-2015[.]"[92] But they sued many years later. To prevail, the defendants must demonstrate "that the plaintiff knew of the invasion of his rights, that he unreasonably delayed in bringing suit to vindicate those rights, and resulting prejudice to the defendant."[93] They have met their burden.

### 1.    Claim Accrual

As a baseline matter, "a claim accrues as soon as the wrongful act occurs."[94] The relevant acts in this case concern purported dilution and overpayment between 2010 and 2015. To that end, the Complaint raises a "concealed pattern of the giveaway, apparently during 2012-2015, of tens of millions of dollars of unearned

---

claim." *Cent. Mortg.*, 27 A.3d at 535. The plaintiffs failed to identify any "other" lawsuit, which falls short of the notice pleading standard. Ct. Ch. R. 8.

[91] *See* Maginn's Opening Br. 26-45; Jenzabar's Opening Br. 34-35.

[92] Am. Compl. ¶ 26.

[93] *Stein v. Blankfein*, 2019 WL 2323790, at *10 (Del. Ch. May 31, 2019); *see also Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009) (reiterating the bedrock principle that "equity aids the vigilant, not those who slumber on their rights[]" (citing 2 *Pomeroy's Equity Jurisprudence* §§ 418, 419 (5th ed. 1941))).

[94] *Tilden v. Cunningham*, 2018 WL 5307706, at *14 (Del. Ch. Oct. 26, 2018).

cash bonuses and hundreds of millions of dollars of stockholder value"[95] and Jenzabar's purported removal of "investors and employees" from the Company's capitalization table from 2010 onward.[96] The plaintiffs' claims therefore accrued no later than 2015.

### 2. Statute of Limitations

When evaluating whether a claim is timely, the Court of Chancery looks to the statute of limitations by analogy.[97] The plaintiffs' remaining claims—for breach of fiduciary duty (Counts I, II, and IV),[98] unjust enrichment (Count VI),[99] corporate

---

[95] Am. Compl. ¶ 32; *id.* ¶ 54 (alleging that, in 2012, Maginn "arranged for Jenzabar to borrow $38 million" as part of its purported dilution scheme); *id.* ¶¶ 76, 89 (raising the "taking of cash and stock in 2012-2015").

[96] *Id.* ¶ 26; *id.* ¶ 55 (explaining that Chai and Maginn's stock ownership increased from 18% in 2010 to approximately 91% in 2021).

[97] *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016); *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009) ("Even though this is a court of equity, equity follows the law, and this court will apply statutes of limitations by analogy.").

[98] Am. Compl. ¶¶ 168-200, 213-25; *see In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) ("It is well-settled under Delaware law that a three-year statute of limitations applies to claims for breach of fiduciary duty."), *aff'd*, 725 A.2d 441 (Del. 1999) (TABLE).

[99] Am. Compl. ¶¶ 248-63; *see Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 42 (Del. Ch. 2012) (explaining that "the analogous statute of limitations . . . for both unjust enrichment and fraud is three years").

waste (Count VII),[100] misappropriation (Count IX),[101] "bad faith" (Count X),[102] and fraud (Count XI)[103]—are subject to a three-year limitations period.[104] The plaintiffs' request for a declaratory judgment about the extent of dilution as a result of various defendants' breaches of fiduciary duty (Count V) is likewise subject to the three-year statute of limitations.[105]

As explained above, these claims accrued between 2010 and 2015.[106] Accordingly, the three-year limitations period expired between 2013 and 2018. This lawsuit was filed in April 2024.[107] Absent tolling, the claims are time-barred.

---

[100] Am. Compl. ¶¶ 264-81; *see Tilden*, 2018 WL 5307706, at \*14 (citing "a three-year limitations period applies to claims sounding in breach of fiduciary duty[,]" such as corporate waste).

[101] Am. Compl. ¶¶ 293-305; *see Tilden*, 2018 WL 5307706, at \*14.

[102] Am. Compl. ¶¶ 306-21; 10 *Del. C.* § 8106.

[103] Am. Compl. ¶¶ 322-36; *see Stevanov v. O'Connor*, 2009 WL 1059640, at \*12 n.63 (Del. Ch. Apr. 21, 2009) ("The analogous statute of limitations for fraud is three years.").

[104] *See generally* 10 *Del. C.* § 8106.

[105] Am. Compl. ¶¶ 226-32; *see* 10 *Del. C.* § 8106 (subjecting statutory claims to the three-year limitations period); *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at \*4 (Del. Ch. Sept. 27, 2013) (explaining that a declaratory judgment claim and underlying breach of fiduciary duty claim were time-barred).

[106] *See supra* Section II.C.1.

[107] *See supra* note 27 and accompanying text.

### 3. Tolling

Delaware courts "will toll the limitation period under certain circumstances[.]"[108] There are three tolling doctrines that may apply: "(1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling following a breach of fiduciary duties."[109] The plaintiff must plead facts supporting the application of a tolling doctrine.[110] "Mere ignorance of the facts by a plaintiff . . . is no obstacle to operation of the statute [of limitations]."[111]

The plaintiffs invoke each of these three tolling doctrines.[112] None applies. A limitations period "is tolled *only until* the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury. Thus, the limitations period

---

[108] *Tilden*, 2018 WL 5307706, at *14.

[109] *Murray v. Rolquin*, 2023 WL 2421687, at *10 (Del. Ch. Mar. 9, 2023) (citation omitted), *aff'd sub nom.*, *McGuigan v. Murray*, 319 A.3d 271 (Del. 2024) (TABLE).

[110] *See Dean Witter*, 1998 WL 442456, at *5-6 ("As the party asserting that tolling applies, plaintiffs bear the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled."); *Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *12 (Del. Ch. Oct. 28, 2022) ("When a plaintiff invokes equitable tolling, it does not enjoy the plaintiff-friendly standard under Court of Chancery Rule 12(b)(6), and the court is not required to draw plaintiff-friendly inferences when determining whether the pleadings support tolling.").

[111] *Tilden*, 2018 WL 5307706, at *14 (citing *Dean Witter*, 1998 WL 442456, at *5).

[112] *See, e.g.*, Am. Compl. ¶ 28 (arguing, for purposes of the "inherently unknowable injuries" exception, that the "misconduct . . . was not known and could not have been known" to the plaintiffs and invoking equitable tolling on the grounds that the plaintiffs "relied in confidence on the fiduciaries of Jenzabar, who concealed their misconduct"); *id.* ¶ 85 (stating, for purposes of the fraudulent concealment exception, that the defendants "deliberately concealed" the misconduct at issue).

22

begins to run when the plaintiff is . . . on inquiry notice."[113] "Inquiry notice does not require full knowledge of the material facts; rather, plaintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued[,] would lead to the discovery of the injury."[114]

As the Complaint itself reveals, the plaintiffs have been on notice of their claims since at least July 30, 2014, when the Court of Chancery resolved a motion to dismiss a lawsuit captioned *In re Jenzabar, Inc. Derivative Litigation* (the "2014 Opinion").[115] There, a plaintiff brought direct and derivative claims for breach of fiduciary duty based on allegedly questionable bonuses paid to Maginn and approved by Jenzabar's Board.[116] The publicly-filed 2014 Opinion dismissing the suit provided Jenzabar stockholders with notice of similar derivative claims

---

[113] *Dean Witter*, 1998 WL 442456, at *6.

[114] *Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *3 (Del. Ch. Jan. 24, 2005); *see also Whittington v. Dragon Gp. LLC*, 991 A.2d 1, 8 n.9 (Del. 2009) (explaining that, when a plaintiff is put on inquiry notice, she is on notice "of everything to which such [an investigation] may have led" (citation omitted)).

[115] *See generally In re Jenzabar, Inc. Deriv. Litig.*, 2014 WL 3827501, at *1 (Del. Ch. July 30, 2014) (highlighting compensation structures "reflect[ing] breaches of fiduciary duties by the [d]efendants"). The court takes judicial notice of the filings in that case. *See Metro. Life Ins. v. Tremont Gp. Hldgs., Inc.*, 2012 WL 6632681, at *12 (Del. Ch. Dec. 20, 2012) (taking judicial notice of documents filed in another action pursuant to Delaware Uniform Rules of Evidence Rules 201 and 202).

[116] *Jenzabar*, 2014 WL 3827501, at *1. The predecessor to that action is *MCG Capital Corp. v. Maginn*, 2010 WL 1782271 (Del. Ch. May 5, 2010).

pertaining to purportedly improper compensation practices and the potential appeasement of Maginn by the Jenzabar Board.[117]

The plaintiffs may have received *actual* notice even sooner. The 2014 Opinion notes that Jenzabar mailed a Notice of Stipulation and Petition of Dismissal (the "Notice") to Jenzabar stockholders on June 27, 2013, which described the lawsuit's claims and informed stockholders of their rights to intervene.[118] This Notice was mailed to all stockholders of record who held Jenzabar stock continuously from December 2008 to June 2013.[119] That would have included the Intervenors, who have been Jenzabar stockholders since 1999 and 2004.[120]

Moreover, when the Trust—the original plaintiff in this action—sought to intervene in the 2014 lawsuit, its representatives publicly testified that they believed Maginn was "stealing from the company" and engaging in "malfeasance."[121] Because the Intervenors stepped into the shoes of the Trust and adopted its

---

[117] *See, e.g.*, *Jepsco, Ltd. v. B.F. Rich Co.*, 2013 WL 593664, at *8 (Del. Ch. Feb. 14, 2013) (explaining that "once the information underlying the plaintiff's claim is readily available, that plaintiff is on inquiry notice").

[118] *Jenzabar*, 2014 WL 3827501, at *1; Ex. A. to Phan Aff. of Mailing, *In re Jenzabar Inc. Deriv. Litig.*, C.A. No. 4521-VCG (Del. Ch. Aug. 22, 2013).

[119] Ex. A. to Phan Aff. of Mailing, *In re Jenzabar Inc. Deriv. Litig.*, C.A. No. 4521-VCG (Del. Ch. Aug. 22, 2013).

[120] *See supra* note 32.

[121] *See* Maginn's Opening Br. 31 (quoting Trust's Answering Br. in Opp'n to Defs.' Mot. to Dismiss, *In re Jenzabar, Inc. Deriv. Litig.*, C.A. No. 4521-VCG (Del. Ch. Feb. 14, 2014) 11, 17, 20, 22).

Complaint as their own,[122] they inherit these timeliness defects. Both the 2014 Opinion and Notice would have spurred a stockholder of "ordinary intelligence" to investigate further.[123]

To the extent the plaintiffs argue that the "giveaway" pattern described in their Complaint persisted until 2015—after the 2014 Opinion was issued—it does not save their claims.[124] Even if the post-2014 acts gave rise to a separate limitations period for the later acts,[125] it expired in 2018. The plaintiffs then sat on their hands for over six years: the Trust until 2024 when it filed this suit, and the Intervenors until 2025.[126]

*       *       *

The plaintiffs' claims accrued between 2010 and 2015. They have been on inquiry notice of the overarching scheme giving rise to their claims since at least July 2014. Tolling doctrines are therefore inapplicable. Because this suit was filed over six years after the statute of limitations expired, it is time-barred.

---

[122] *See* Mot. to Intervene Letter Op. 7.

[123] *Pomeranz*, 2005 WL 217039, at *3.

[124] *See* Pls.' Opp'n to Maginn 32, 34.

[125] *See Lebanon Cnty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1214 (Del. Ch. 2022) (explaining that inquiry notice cuts off the ability to toll past acts, but a plaintiff may still sue for separately accrued breaches occurring thereafter, provided they do so within the limitations period for those later acts).

[126] *See* Dkts. 1, 95.

# III. CONCLUSION

Counts I to II, IV to VI, and X are derivative in nature. Counts III, VIII, and XII are unripe in full, and Counts I to II, V, VII, IX, and X are unripe to the extent they are premised on the indemnification of Maginn. Counts I to II, IV to VII, and IX to XI are time-barred. The defendants' motion to dismiss is therefore granted. Counts III, VIII, and XII are dismissed without prejudice, and the portions of Counts I to II, V, VII, IX, and X pertaining to indemnification are dismissed without prejudice. The remainder of the Complaint is dismissed with prejudice.